UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CAROL GILSTRAP                                                                    PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:05CV-157-S

HARTFORD LIFE                                                                     DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on cross motions for judgment on the administrative record in this action arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

The claims in this action allege violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") and state law. The plaintiff, Carol Gilstrap, alleges wrongful denial of disability benefits under the Kimball International, Inc. Group Disability Policy (hereinafter the "plan" or "policy") provided by her employer. There is no dispute that her claims relate to an employee benefit plan. *See,* 29 U.S.C. § 1002(1)(A); *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Thus the action is governed by ERISA, which preempts her state law claims for relief. *See, Pilot Life v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889 (6th Cir. 1997); *Cox v. Blue Cross & Blue Shield of Michigan*, 869 F.Supp 501, 504 (E.D. Mich. 1994).

Gilstrap became disabled under the terms of the policy and was found to be unable to engage in her own occupation as a finisher for Kimball. She received long-term disability benefits for a period of twelve months. The policy stated that after the first twelve months, an employee must be prevented

by accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy from performing the essential duties of any occupation for which that employee is qualified by education, training, or experience.  Administrative Record ("AR"), p. 403.  By letter dated July 14, 2004, Gilstrap was notified that her benefits would be terminated effective June 30, 2004, as Hartford had determined that she no longer qualified as "disabled" under the policy.

In addressing Gilstrap's claims for wrongful denial of benefits, we review Hartford's decision under the "arbitrary and capricious" standard, since the disability plan in question grants Hartford, the plan administrator, discretionary authority to determine eligibility for benefits under the plan.  *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir. 1996); *citing, Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Daniel v. Eaton Corp.,* 839 F.2d  263 (6th Cir.), *cert. denied*, 488 U.S. 826 (1988).  The policy provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  AR, p. 400.  This action raises the issue of Gilstrap's eligibility for benefits.  This issue falls squarely within the clear discretionary authority granted to Hartford.

The court concludes upon review that Hartford's decision to terminate Gilstrap's benefits was not arbitrary and capricious.  The court must affirm Hartford's denial of benefits "if evidence in the record reflects an reasonable explanation for the decision."  *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693-94 (6th Cir. 1989).

Gilstrap was diagnosed by a hand specialist, Dr. Amit Gupta, with osteoarthritis and bilateral carpometacarpal joint arthritis.  AR, p. 341; 301.  She became disabled from her occupation as a finisher on November 7, 2002.  AR, p. 373.  There is no dispute over Dr. Gupta's diagnosis nor is there any question that she remains restricted from performing her occupation.  Gilstrap initially received short-term disability benefits, then began receiving long term disability benefits on May 16, 2003.  The claims in this action relate solely to Hartford's determination in July, 2004 that she remained able to perform sedentary work and thus was no longer eligible for long-term benefits after

- 2 -

May 16, 2004.  AR, p. 136.  Her appeal of that decision was denied on November 9, 2004.  AR, p. 97.

On June 2, 2004, Gilstrap received a letter informing her that her claim for continued long-term disability benefits was being considered.  The letter informed Gilstrap that information concerning her condition had been requested from Dr. Howerton and Dr. Ehsan, two of her treating physicians.  She was advised that she would continue to receive benefit payments during Hartford's investigation and determination of her claim.  AR, p. 189.

On July 14, 2004, Hartford notified Gilstrap by letter that "the evidence submitted in support of [her] claim [did] not establish that [she] continue[d] to meet the policy definition of Disability."  AR, p. 136.  The letter explained Hartford's decision, stating in pertinent part:

> We based our decision to deny your claim for benefits beyond June 30, 2004 upon policy language and all documents contained in your claim file, viewed as a whole, including the following specific information:
>
> 1. Your application for LTD benefits received on May 14, 2003.
> 2. A Physical Capacities Evaluation (PCE) form completed by Dr. Mohsen Ehsan on June 11, 2004.
> 3. A Physical Capacities Evaluation (PCE) form completed by Dr. Christopher Howerton on June 8, 2004.
> 4. A telephone call placed to Dr. Mohsen Eshan's office on July 7, 2004.
> 5. Employability Analysis performed by our Rehabilitation Clinical Case Manager.
>
> ...When we investigate [sic] whether you could perform the duties of Any Occupation, we considered your prior education, training and experience.  The information you provided indicates you have successfully completed the 12th grade and you have one year of medical secretary training.  Your file also documents that you worked as a receptionist for over 11 years, Shipping and Receiving Clerk for four years, Painter/Spray I for four years, Fast Food Worker for two years, and Fast Food Services Manager for one year.
>
> We received a Physical Capacities Evaluation for completed by Dr. Howerton on June 8, 2004 based on your lung condition.  Dr. Ehsan completed a Physical Capacities Evaluation form on June 11, 2004 based on your arthritis condition.  According to Dr. Howerton and Dr. Ehsan, you are capable of standing for 15 minutes at a time for one hour per day, walking for 30 minutes at a time for one to two hours per day, and sitting for 30 minutes at a time for six hours per day in a eight hour workday.  Dr. Howerton and Dr. Ehsan also indicated you are capable of lifting up to 20 pounds occasionally, reaching frequently at or below waist level, and occasionally handling, fingering, and feeling.

> While these records indicate that you have some limitations on lifestyle and occupational pursuits, the current medical information provided based upon exam and testing, indicates you would be capable of sedentary type work.
> Using this information, a Vocational Rehabilitation Case manager performed an employability analysis which showed that there are a number of occupations that you are qualified for and are within your physical capabilities. The salaries for these occupations are above 60% of your Indexed Pre-Disability Earnings, as required by the definition of Any Occupation.
>
> ...Based on this information, we have concluded that you are not prevented from performing the essential duties of Any Occupation.

AR, pp. 136-138.

On September 29, 2004, Gilstrap sent a letter to Hartford appealing the decision to terminate her benefits. In her letter she stated that her arthritis in her hands had gotten more painful and that she couldn't do anything with her hands without pain. She requested that Hartford review the PCE form submitted by Dr. Gupta, and consider that she had severe arthritis "throughout [her] whole body," and that her "new bloodwork shows high levels of inflamation in [her] body even with taking 400 ml of celebrex daily." AR, p. 124.

On October 29, 2004, Hartford informed Gilstrap by letter that it was considering her appeal and had requested updated medical records from Dr. Ehsan. It also requested that Gilstrap furnish copies of pharmacy records from January 1, 2004 forward. AR, p. 121.

Gilstrap was notified by letter dated November 9, 2004 of Hartford's decision to uphold its termination of benefits. The letter indicated that Hartford had considered Gilstrap's appeal letter, the additional medical records from Dr. Ehsan and from her pharmacy for the period January 1, 2004 to date, along with the information already in her claim file. The letter referred Gilstrap to the July 14, 2004 letter and found, in pertinent part:

> Your letter of appeal discusses the difficulties you're having with your hands. Your opinion is that you would not be able to perform any occupation. The records reviewed from the pharmacy and from Dr. Ehsan's office do not support that your condition is of that severity. Dr. Ehsan's office notes do indicate that you have arthralgia myalgia and a couple of features of connective tissue disease, but the last blood work up that you had was fairly normal. Your joint exam showed mild restriction in range of motion of your shoulders and hips. Your wrists and

metacarpal phalanges were tender, but Dr. Ehsan could not appreciate any significant synovitis or effusion in the joints. There were a couple of tender spots in the upper trapezius and over the trochanteric and anserine bursae but you didn't have the typical trigger point tenderness of fibromyalgia. Dr. Ehsan stated that there was very minimal muscle tenderness and mild muscle weakness. No pedal edema, which is swelling of the lower limbs.

Dr. Ehsan stated he is puzzled as to why you have so much pain and aches in spite of taking all of this medication.

Therefore, it remains our determination that the weight of the medical evidence does not document a loss of functionality sufficient to render you Totally Disabled from any occupation which you are qualified for by training, education or experience as defined by the Policy.

AR, p.97-98.

A review of the administrative record establishes that Hartford accurately restated the medical findings which are incorporated in its decisions of July 14 and November 9, 2004. Gilstrap contends that Dr. Ehsan and Dr. Gupta both determined that she was disabled from any work.

Dr. Gupta's Physical Capacity Evaluation clearly did not say anything of the sort. He concluded his report by stating that she was to be on restricted duty from December 31, 2003 through at least her next follow-up appointment with him. He stated that her work restrictions were to avoid constant, repetitive/static use of both hands (ie. pinching/gripping) and to avoid the use of vibratory (pneumatic) tools. AR, p. 238.

Dr. Ehsan's Physical Capacity Evaluation dated June 11, 2004 indicated that Gilstrap could sit for thirty minutes at a time for a total of four hours in a work day, that she could walk for one to two hours and drive for thirty minutes for two hours in a work day, that she could occasionally lift up to twenty pounds and could frequently reach below waist level. He noted that she could handle, finger and feel occasionally but did not have the capacity for repetitive use of either hand. He noted that at that time she was unable to have gainful employment. He further stated that "Some of her problems are temporary. Some not arthritis. May improve..." He indicated that the date that she would be able to return to work with restrictions was "unknown." AR, pp. 175-76. Medical records

obtained from Dr. Ehsan for dates of treatment after June, 2004 indicated, as recited in Hartford's November 9, 2004 letter, that his physical exam and review of her medications did offer an explanation for the level of pain and aches that she was reporting. AR, p. 115-16. Hartford contacted Ehsan to request clarification of his PCE. Hartford was informed that she was capable of sitting four hours and driving two hours in a workday. She would be able to sit for six hours per day if she was not required to drive, she would be able to stand for one hour and walk for one to two hours. AR, p. 32.

We conclude that Hartford offered a reasoned explanation for its decision finding that "the weight of the evidence does not document a loss of functionality sufficient to render you Totally Disabled from any occupation..." The quantitative evaluations of Gilstrap's physical capacity by her three treating physicians coupled with more recent medical records from Dr. Ehsan constitute the weight of the evidence supporting Hartford's decision. There was no error in Hartford's conclusion that Dr. Ehsan's statement in June, 2004 that "she is unable to have gainful employment at this time," was not determinative. Hartford relied upon the most recent and consistent data from her own treating doctors.

Gilstrap argues that her medical records taken as a whole indicate that she had such an accumulation of illnesses that she was rendered disabled. Gilstrap did not make this argument in her appeal. However, she did mention that she was afflicted with other illnesses in addition to her arthritic condition.

Dr. Howerton provided a PCE for Gilstrap, related only to her lung disease. AR, pp. 172-173. Dr. Howerton saw and treated Gilstrap for asthma and histoplasmosis in April of 2004. Dr. Howerton's PCE in June, 2004 stated that Gilstrap could work up to eight hours per day with up to seven hours of sitting, four hours standing, two hours walking and two hours driving. With her lung condition, he noted that she could frequently push or pull up to twenty pounds and occasionally push or pull fifty pounds. He noted that she could frequently carry or lift up to ten pounds and

occasionally lift/carry twenty pounds.  She could not climb, kneel, crawl or crouch, but could stoop and balance.  From the standpoint of her lung disease, Dr. Howerton indicated that she could return to work without restriction as of June 9, 2004.  Therefore, the court finds Gilstrap's argument that the cumulation of her illnesses rendered her disabled to be without merit.

Hartford considered education and work history information provided by Gilstrap as well as her treating physicians' determinations as to her functional limitations in concluding that she was employable in a number of sedentary work settings.  The record contradicts the statement in her brief that "This woman is 58 and has her whole life only worked in a factory type profession.  There is no vocational study to suggest she can be retrained."  Memorandum in Favor of Award, pg. 6.  In fact, the record reflects that Gilstrap has a high school education and one year of medical secretary training, she worked as (1) a receptionist for over eleven years, (2) a shipping and receiving clerk for four years, (3) a fast food worker for two years, and (4) a fast food service manager for one year. AR, p. 339.

Gilstrap did not suggest on appeal that she was unqualified for a sedentary position in general or any of the positions of Information Clerk, Case Aide, Surveillance-System Operator, or Weight-Reduction Specialist which were specifically mentioned in Hartford's July, 2004 letter.  AR, p. 138.  In any event, such an argument is meritless in light of the above-cited information Gilstrap provided concerning her education and employment history on her application for disability benefits.

For the reasons set forth hereinabove, the motion of the defendant, Hartford Life and Accident Insurance Company, for judgment will be granted.  The motion of the plaintiff, Carol Gilstrap for judgment will be denied.  A separate order will be entered this date in accordance with this opinion.